May it please the court, I'm Cynthia Cohen, counsel for Wells Fargo Bank, the appellant in this matter. I'd like to reserve five minutes for rebuttal. Certainly. I want to give you a thumbnail picture of the issues I'm going to argue today. Can you just move the microphone down just a little bit? Is that better? Yeah. A thumbnail picture of what I'm going to be arguing today. There are a number of issues presented by the papers, and some of those issues even have sub-issues. And I'm going to focus on some but not all of them in my oral argument. The most important issue in our view in this case is the classification question, and that concerns whether or not it was appropriate for the bankruptcy court and the bankruptcy appellate panel to approve a separate classification of Wells Fargo's unsecured deficiency claim on the grounds that it was guaranteed by principles of the debtor. Just to interrupt for one second, because I agree that's the most important legal issue here. If we were to not agree with you on that other issue, would we not breach the classification issue? Am I right in understanding that? You are right that we have to prevail on all three matters, including the mootness motion, in order to prevail on this appeal. Got it. Okay. Sorry. Well, let's talk about mootness then. Okay. We don't believe this appeal is moot for the reasons set forth by this Court in the Thorpe insulation opinion. We concede that there has been substantial consummation. We concede that there has not been a State pending appeal, but a stay was sought both in the bankruptcy court and the bankruptcy appellate panel. But Thorpe pointed out that there is no constitutional mootness if the Court can fashion an effective remedy for the appellant. Which is what here? What is it that you're proposing? We are proposing that the treatment of Wells Fargo under the plan of reorganization be undone. And that there are two ways for that to happen. One, the debtor can pay the additional monies that would be owed to Wells Fargo if they had to unimpair Wells Fargo in a plan of reorganization, because they could not confirm a plan that impaired Wells Fargo. That would be paying more money to Wells Fargo. That's what I really don't understand. I did review carefully the argument set out in the briefs, and I still don't understand how that would knock the props out from under the plan. The opening brief, I think, had a statement that essentially it would have to be a new reorganization plan. So to me, that's unraveling the entire thing. It doesn't have to be a new plan. It just has to be different treatment for Wells Fargo. Every other creditor has received its payments under the plan. Genesee, which is the other impaired class, allegedly, was supposed to be paid over a two-year period. That two-year period has already occurred. The only unpaid creditor is Wells Fargo. It's unpaid on its secured claim. You don't need to take the money back from any of the other creditors in order to change the treatment of Wells Fargo. You don't have to completely undo the plan. You just have to undo the treatment of Wells Fargo under the plan. And that's why the appeal is not moved. Wells Fargo has stated in writing, and states again today, that if the only way to render this appeal not moved is for Wells Fargo to write a check for every dime it's been paid, give it back to the debtor and start over with respect to the payments due to Wells Fargo in a bankruptcy, Wells Fargo is prepared to do that. No other creditor needs to do so. The alternative remedy is that the debtor could write a bigger check to Wells Fargo, because had the debtor not been able to confirm this plan with a separate classification, it would have had to pay Wells Fargo in full or lose its property to foreclosure. That is either remedy, either the return. So forgive me for beating this horse. It may be very clear in your mind, but not quite so clear in mine as to how exactly this is going to play out. Under your remedy, the old plan basically is going to be in effect in part. It will be unraveled as to Wells Fargo. Wells Fargo will then go back into bankruptcy court with Loop 76, and then will there be a new reorganization plan proposed just as to Wells Fargo? That's how it's going to play out. I know I'm getting a little bit in the weeds here, but I want to have you walk me through the argument. I want to understand how it is that the bankruptcy court is going to resolve this matter only as to Wells Fargo. If the plan were overturned as to the treatment of Wells Fargo, and even if we prevail on the Genesee issue in order to get the remedy we seek, we are not asking that Genesee give back the money it received, the bankruptcy court would have to decide whether or not the debtor could confirm a new plan or a plan A with respect to the treatment of Wells Fargo. I have tried to figure out what those plans can be, and I've come up with two. If the debtor were to pay Wells Fargo in full under the bankruptcy code, Wells Fargo would not be impaired and therefore would not have the ability to vote no on the plan. It would be deemed to have consented to the plan. The debtor would get its discharge, but Wells Fargo would receive full claimant in both its secured and its unsecured claim. That's one possibility that affects nobody other than the debtor and Wells Fargo. They'd have to write a bigger check than they've written so far. The alternative is Wells Fargo gives back the money and the debtor starts again. Presumably the debtor has no impaired consenting class to consent to a new plan of reorganization that would cram down Wells Fargo. Therefore, they would be unable to confirm a reorganization plan with a different treatment of Wells Fargo. The alternative would be a Chapter 7 liquidation or Wells Fargo would have relief from state of foreclose on the property. So you're talking there, give back all the money, but now there's only one vote because there's only one creditor. That's correct. That's correct. If this plan had been properly put forth, the debtor would not have been able to confirm a plan over the objection of Wells Fargo. Wells Fargo voted no on its secured claim and voted no on its unsecured claim. And if Wells Fargo's unsecured claim had been classified with other unsecured creditors and Genesee in the same class, there could have been no consenting impaired class to cram down the treatment of Wells Fargo. Let me ask you something about the classification. I know we've received amicus briefs and, of course, your brief that make the reclassification look like a very serious problem for creditors nationwide. On the other hand, it looks like the Seventh Circuit okayed it in the matter of Woodbrook Associates. So it wouldn't be us. It would just be us agreeing with the only sister circuit to address something very similar. Actually, no. This Court previously addressed the Woodbrook issue in Barrickhead. Woodbrook held that the ability of the secured creditor to make what's called the 1111B election, that's to decide whether to have its claim treated as fully secured under a plan or split into a secured and an unsecured deficiency claim, Woodbrook said that's a reason that requires separate classification. This Court in Barrickhead expressly rejected the Woodbrook holding. And so this Court, in our view, decided in Barrickhead that the lender's unsecured deficiency claim is similar, substantially similar to other trade claims and cannot be classified separately absent a legitimate business or economic justification. Now, why isn't there – there's some discretion involved in classification and some deference involved by reviewing courts. Why isn't there enough ground for separate classification of a guaranteed unsecured claim from an unguaranteed secured claim? Because in Barrickhead, this Court recognized that underneath what might appear to be a factual finding on what is and isn't substantially similar, there rests a legal issue, which is the limits on how you can separately classify. I'm thinking if – suppose I had a bankrupt child, suppose anybody had a bankrupt child, and the child had a bunch of unsecured creditors, but on one of the kid's loans, a parent had guaranteed the loan. I think that would be the analogy, and it would obviously be in economic terms a very different sort of unsecured debt from the ones that had no guarantors. Not from the standpoint of classification under the Bankruptcy Code, and let me explain why. The Supreme Court in the Ivanhoe case, which is the supplemental citation we wrote out for the Court earlier, held that the existence of collateral or a guarantee from a third party has no effect on the claim of the creditor as against the debtor. The only thing it could have an effect on is the distribution that would be made to that claim. Let me be more specific. It's Ivanhoe. The case is Ivanhoe, yes, and I handed the clerk the citation. Ivanhoe is an old case that doesn't on its face deal with classification. It's way before the new Bankruptcy Code and actually before most of the case law on this issue. But what happened in Ivanhoe is there were co-oblivors. One had security, the other one was an unsecured creditor. Ivanhoe was actually very analogous to the Steelcase v. Johnston opinion because Johnston was the guarantor, not the primary obligor in that loan. And what the Court held in Ivanhoe, and it's been cited subsequently in bankruptcy opinions in this circuit and in the Second Circuit, is that the only effect the alternative source of payment has is on the distribution the creditor can receive. And the reason it has an effect on distribution is a creditor is not supposed to receive more than 100 cents on the dollar. So if you had a guarantor who was a wealthy guarantor that paid 95 cents of what was owed on the dollar to the creditor, the distribution that the creditor could receive from the bankrupt, the debtor, could only be an amount that would equal 100 cents on the debt. It doesn't affect the amount of the claim. It affects the distribution on the claim. And if it doesn't affect the claim, it's distribution is broad enough language to support classification. Now, if it can only affect distribution to the limited extent that the creditor with a guarantee cannot receive more than 100 percent of the unsecured debt, that's narrower. And I haven't read Ivanhoe. I don't know what your case is. It's Ivanhoe. I didn't read Ivanhoe in connection with writing this brief either. I came across Ivanhoe in a totally different capacity involving another case in this circuit that has not risen to the circuit level. Classification affects distribution. Classification affects voting. Voting. Arithmetic affects distribution. And the key point of Ivanhoe is the classification is unaffected. The creditor gets to vote 100 percent of its claim in the class it belongs, whether it has a guarantor or it doesn't. It just can't take funds out of the estate that would pay it more than in full. The Ivanhoe case really is a case where there was no question that the creditor wouldn't be paid more than 100 cents on the dollar. There's an opinion by Judge Carlson in the Northern District Bankruptcy Court that applies Ivanhoe expressly for the proposition that the creditor's claim is unaffected. It's only the money the creditor receives. And there's an opinion by Judge Gropper in the Southern District of New York that cites Ivanhoe for the proposition that it can't affect the classification because it doesn't affect the actual claim. It only affects the size of the check the creditor receives. So we believe that Ivanhoe, coupled with Baraket, says that the existence of a guarantee or a third-party source of payment has no impact on the classification of the creditor's claim. Is there anything other than Woodbridge that speaks to or might speak to whether it has an effect on voting? Absolutely. Every circuit that has addressed the issue, other than the Seventh Circuit in Woodbridge, has held When you say circuit, you mean circuit courts? I mean circuit courts. I mean the Second Circuit, the Third Circuit, the Fourth Circuit, the Fifth Circuit, the Sixth Circuit. Every circuit that has addressed the issue has held either expressly or by implication from the facts in the case that the existence of a third-party source of payment has no effect on the classification of the unsecured deficiency claim. Baraket was actually one of the last cases to come down on the separate classification issue. The Greystone case was the first one, and it adopted the gerrymander rule. The other circuits started to follow one after the other, with the exception of the Seventh Circuit in Woodbridge. And when the Ninth Circuit was presented with the issue in Baraket, the Ninth Circuit went through in Baraket what it called the greystone three line of cases, and said we agree with the greystone three line of cases, and we hold that you cannot classify the lender's unsecured deficiency claim separately from other trade claims unless there is a legitimate business or economic justification. Baraket had co-obligors. There was a note that was assumed by certain people. Only one of whom became a debtor in the case. The Ninth Circuit pointed out in its Baraket opinion that there were co-obligors. Co-obligors are like guarantors. They are ‑‑ Well, let's look at Baraket for a moment, because in both Baraket and Johnston, both cases that you cited heavily, we really ‑‑ there was a look at the standard of review in that case, and a deference to the factual findings made by the bankruptcy court. I'm not sure it goes as far as you say it goes in terms of a matter, ruling as a matter of law, dealing with situations like this where unsecured claim, you know, has non‑debtor sources of payment. So if we look at it from that perspective, that this is a factual finding that we review for clear error, and we take that and put it into this situation, then was it clearly erroneous for the bankruptcy court to classify it in the way it did here? It is a question of fact as to whether a guarantee existed. That is conceded by stipulation in the bankruptcy court, and there's no dispute as to that on this appeal. The bankruptcy court and the bankruptcy appellate panel held that the existence of the guarantee, as a matter of law, made the lender's unsecured deficiency claim not substantially similar. That is not a factual finding. That is a legal finding. We argue that the existence of a guarantee is irrelevant to whether a claim is substantially similar. As a legal matter. As a legal matter. That Your Honor should reverse the court below and hold as a matter of law that the existence of the guarantee is irrelevant. Because if you didn't do that, you'd have to get into a factual analysis of whether this guarantee has certain attributes that that guarantee wouldn't have, and you'd have to make that analysis for every single unsecured claim in a case. Lenders' claims are not the only ones that are sometimes guaranteed. Landlords have letters of credit. They have guarantees from parent companies. Certain trade claims may be large enough to command a guarantee from a principal. Would you separately classify each and every unsecured claim in a case simply because there might be an alternative source of payment? Nobody has ever done that. You'd have to have a mini-trial, not only on the existence of the guarantee, but on the solvency of the guarantor. It's our position that as a matter of law, the guarantee is irrelevant, and the solvency or lack thereof of the guarantor is also irrelevant. You wanted to save some time for rebuttal. Yes. Well, can I just ask you to be sure when you come back up to address the Genesee claim, because that's where I need help. And I know you had to allocate your time to respond to the question. Right. I had intended to do that in my opening thumbnail remarks, but I'll deal with it in rebuttal. Thank you very much. May it please the Court, Gerald Gordon Silver on behalf of Loop 76. Can we start with mootness with you as well, Counsel? Pardon me? Can we start with mootness with you as well? Absolutely. That's where I was going to start. The problem with Wells Fargo's position on mootness is we have to look at what took place. They concede substantial consummation took place. Based on the confirmed plan, the principals put a new value of $2 million. That was used to capitalize the company. That was also used to pay various creditors. They paid $400,000 to reorganization counsel. Based upon final orders entered after the plan was confirmed, first and final orders, they got paid $400,000. They did pay $800,000 as of the date of the motion to dismiss to Wells Fargo on their secure claim. They paid $617,638 to Wells Fargo on their unsecure claim, which represented the full 10% distribution. And they paid all of the creditors. They've got a way out. That's the argument, right? So can you play out under their scenario of a way out what would happen if this goes back to bankruptcy court? One point, and then I was going there. And that is they also paid $150,000 to a lessee to cure a lease. And they paid the unsecureds. If this plan is reversed, then I don't see the way out. You kind of kick the props out from under it. What happens to the professionals? They're going to have to discourage their $400,000. And we can rest assured that there's going to be opposition to their case. You just heard counsel for Wells Fargo say that that's no part whatsoever of the proposal they're making. So just put that aside. I can't put that aside because it's exactly what they are saying. They're also saying that nobody has to destroy anything. No, but what I'm saying is as a matter of law, that has to happen. They don't control this process. If what they're saying is we either confirm this plan that provides us 100% in full, we'll say no, okay, or they don't have the right of doing that. The trustee in Chapter 7 would have that right. Well, let me just say, your argument just doesn't seem very sympathetic to me because as I understand it, your client resisted granting of the stay on the ground that, oh, don't worry about it, there will be alternative relief that can be afforded later. No, he didn't. The client did not. What the client did was responding to the argument, the factor of irreparable harm. Wells Fargo raised that issue and said, wait a second, we're going to be irreparably harmed because it could be equitably moot. And my client says, wait a minute, that's not a factor for irreparable harm, whether it's equitably moot or not. That's a jurisdictional issue. I thought your client made a specific representation that there could be alternative relief fashion and that's why courts, you don't need to worry about the toll. But they're also not planning to pay back the $2 million to the principals, are they? I don't believe so. That's not what they say. What I'm saying is it cannot be unwrapped. It just can't be put back together again. If your side resisted a stay on the ground that the case would not be equitably moot and your resistance was successful, that would be the elements for judicial estoppage. Yes, it would, except for one issue. First of all, the premise of, Your Honor, is wrong. What they did is they responded to it in reference to irreparable harm. Number two, equitable mootness is still a jurisdictional issue. This Court and no court can issue, in essence, advisory opinions on moot issues. If it's moot, it's moot. Well, I think the case law is clear that we're not talking about equitable or about constitutional mootness here. That's correct. We're talking about equitable mootness. We're talking about equitable mootness. That's correct. It sounds like what you're saying is we didn't resist a stay. We just said one ground on which they claimed it was entitled to a stay was wrong. The client did resist a stay, obviously. There's no question about that. I'm just focused on that one issue that was raised and trying to put that in perspective. I just don't even see a difference. I mean, if the case is equitably moot and Wells Fargo can't get appellate review, that would be irreparable harm. The whole argument was about that. It is, and that's always going to happen. But what we pointed out was is that the fact is if that is so, then there's irreparable harm in every situation. There would be because plans get confirmed, they go effective, things take place. And what we're not talking about in this case is Wells Fargo is not appealing from an interest rate, a term, something which would be compatible within the plan, be a slight modification. It's seeking to set this aside in its entirety. Let me respond to that. Well, one way is to set it aside in its entirety and then have a new reorganization plan. Everybody goes back in and sort it all out again. The other way that Wells Fargo proposed is basically to let everybody else keep their shares, whatever was paid out, and then Wells Fargo would put the money back in the pot and would start over. Only as to Wells Fargo, would that work? Well, if you can confirm a plan. But Wells Fargo has said it's very unlikely that there will never be a plan confirmed. If that's the situation, the answer is going to be no. Because in that situation, you're going to have a Chapter 7 trustee. The property is probably going to be foreclosed upon, almost absolutely. And then you have a trustee who's now going to be trying to recover proceeds and disgorge various proceeds. How do you recover the $150,000 from the lessee? How do you recover the money from the insecurities? I'm saying that that's a problem. People have relied upon this. And the principals have advanced $2 million as new value. Why would you have to recover those monies? Why would the trustee have to recover those monies? Well, first of all, if the trustee has to figure out what's in the estate, and the trustee obviously is going to have his own administrative costs and fees, just as a matter of course, when something's reversed like this, naturally trustees seek to recover proceeds. It just goes without the territory. There's no money. There would be no money. The bank would foreclose. Suppose it did go to Chapter 7. They look at it. They sell off the property. There's no value in the property. It's nothing to be sold off. It would be foreclosed upon. There's no equity in the property. That's clear? When you say there's no value, that's it? There's no value. No equity. No equity. The property would be sold. The administrative expenses come first. No. It's highly unlikely the trustee's going to sell it. The property's going to be foreclosed upon. There's no value for the estate. The trustee's going to immediately agree to a stay and allow the property to be foreclosed on. Why wouldn't he? Or he or she? There's nothing there for the estate. The best that the trustee's going to try to recover is the cash that was paid out. And recover that on the basis that it was payments played under a plan and recover that. Now, Wells Fargo could step up and say we will pay that amount and pay it back to the trustee. But they haven't said that. Especially they haven't said with regard to the $2 million that the principals advanced that made all of this possible. So you're saying the trustee will claw back no matter what Wells Fargo wants or waives because the trustee wants to get paid. Look, it's anecdotal, but I've been doing this a long time, and that's what trustees will do in this situation. Can I hear you address the Genesee claim? Yes. Because I'll just tell you, I'm not with you on this classification issue. I'm with Wells Fargo. But you could still win on this claim. And I've got to say, on the surface, boy, it looks about as fraudulent and sort of made up as anything I can imagine. First of all, with regard to the Genesee, there's a very clear issue here as to what the standard on appeal is. That was the main issue before the BAP truly was the main issue. And that is findings of fact are upheld unless they're clear error. This court did something that I have not seen done by other courts. I did not try the case. I came in for the appeal. It held a series of evidentiary hearings on each and every one of these points. And it made specific separate orders and findings on each of these points. What the court held, the bankruptcy court, after listening to the evidence, was that it may have been sloppy, but he found that under Arizona law, an agreement had been reached between the parties. On the date represented in that letter? Yes. He found that there was the parties entered into an agreement. They agreed to grant a security interest. He found that a piece of equipment was shipped, that there was a payment due on that piece of equipment, that the parties understood that, and that a UCC was filed. While he says it was sloppy, it was still a legitimate claim. Can I ask you, in the course of that evidentiary hearing, was Wells Fargo saying, are you kidding me? Yes. This, of course, is very clear. Yes. And they also objected on the basis of it being gerrymandering and bad faith and was intended to create a class. And he found against them on that, too. Findings of fact. Where are those findings? Pardon me? Where are those findings? Those are in the order confirming the claim? No, I don't believe so. I think that's in the confirmation or in one of the orders. I don't have it in front of me. But your argument would be that implicitly the bankruptcy court had to have rejected all of those arguments. Even if it had not, he had to reject it, and he did. By finding good faith under 1129A3, good faith, he had to find it. And the bankruptcy court heard from this kind of shady principle of the other entity and the principles of your claim? My recall of the record is absolutely yes. There was testimony taken and was heard. And the court made decisions based on the evidence before it, based on the fact that Putnam was shipped, based on the fact that UCC-1 was filed, based on the fact of all those things. I believe there was one issue, and I just can't remember, so with regard to the principle, and I don't want to go on the other side. I don't want to go too far on that. But the court did conduct evidentiary hearings and made findings. So unless this court is prepared to find that based on that the court erred as a matter of law, clear error, then the Genesee is a finding, in fact, that needs to be sustained. Let me go back to the classification because I – yeah. Look, this is not an earth-shattering, sea-changing decision. It's not a modification of existing law. It's a relatively narrow determination made on facts, consistent with three cases of this court. And alluding to Judge Conefield's discussion of the amicus, I read those, of course, and I read them again last week. And the sky has not fallen in. I mean, they basically have portend that this court, upholding that decision, is going to put an end to the issue of guarantees being used as additional credit enhancements in the commercial mortgages. Well, that's what I'm really struggling with, because really, with regard to the classification issue, because Wells Fargo is saying that as a matter of law, non-better guarantees is just really not a sufficient basis to find that the claim is not substantially similar, as a matter of law. And I think that was the argument that they advanced as well. But in background, Johnson, there were findings of fact made. So how do you analyze that finding of fact versus a question of law? I think, and I agree with Wells Fargo, that when the only existence is a guarantee itself, guarantee, with nothing else present about the guarantee, it is inadequate for it to be dissimilar or classified separately. So we have to have a mini-trial every single time to figure out how solvent the guarantors are? Are you kidding? Well, wait a minute. But yes. That makes no sense. Yes, it does. And it's never been done. Yes, it has been done. When? Johnson? There's a totally different situation. And it was done in this case. But it goes back to the question, Your Honor, of what? There was a mini-trial in this case, and the guarantors actually did have some money they could use to pay off the dispute. Yes. And the Court found they were solvent. The Court found they had been sued. The Court found that they had disputes. But the Court found they were solvent and able to meet. That makes a difference. Classification does not look in the... I'm not saying it didn't happen here. I'm saying it makes no sense to make it happen in every single one of these bankruptcies. Except that when you see the cases, especially the ones Wells Fargo cites, it happens. It happened in literally each of the cases cited by Wells Fargo and their position. In Fourth Street, East Investors, from the other... They talk about it. And they say, debtor has not shown that a factual matter as a factual matter coastline has any realistic alternative source of recovery and the burden of proof is appropriately on the debtor to make the showing under both 11 U.S.C. 3622 and 1123. And they go on in the other cases. There was an opportunity for Wells Fargo in this case to show, as a matter of fact, why the existence of the guarantee renders the claim not substantially similar. Yes. Unless, really, the bankruptcy court was making a finding of fact. Exactly. Because it's saying, Wells Fargo, there is this existence of a guarantee. Come in and show me why or why not it's substantially similar. And, you know, whether Wells Fargo did or did not, it just wasn't convincing to the bankruptcy court. Is that a fair way to look at the record? Your Honor, yes, in this respect. We know that Bearcat, we know that Johnston, Bearcat and Commercial Western all hold that an issue of classification is a finding of fact. So we know it's a finding of fact. So going to where Your Honor is, it's not a matter of law. It's a finding of fact. It's completely a matter of law. The whole question is whether it's even permissible to look at the existence of this guarantee. That's a question of the law. It has nothing to do with law. No, Johnston says that it's a two-pronged, in essence, test. First you look to see if it's substantially similar. If you determine it's not substantially similar, then it has to be separately classified as a matter of law. If it is substantially similar, you need to look and see if there's a rational economic or business rationale for separately classifying. And as a matter of law, the existence of this guarantee is not a proper business or economic justification. No, that would be reversing. That's what they're arguing. I'm just saying. That's what they're arguing. That's what we're being asked to decide. That's what they're arguing. Right, right. That would be a violation of Johnston and Bearcat. They rely on Bearcat. And what they go to Bearcat is the following. They say, well, Bearcat says, no, you can't do this. Uh-uh. Bearcat got past the first. They found that there was no ‑‑ that they were not dissimilar. There was no findings, conclusions. They were dissimilar. So now you're dealing with are they substantially similar. And what Bearcat said and all the other courts have said, generally, except for one, is that there's certain things which don't make for dissimilar and they are substantially. They're substantially similar. They're not entitled to be separately classified. Okay? And that is, one, a level MV. Level MV does not create a rational economic or business rationale for separately classifying. Basically, it almost goes to gerrymandering. Number two, a deficiency claim by itself. A deficiency claim is not to be separately classified. Unless ‑‑ but, see, that's that test. You never get to the top. You're not still at the top. Because in Johnston, they said, wait a minute, there's a separate source of recovery. That makes it different because that creditor's motivations are different. What they're looking for is different. Help me on something here, backing up to something that you just said. I don't want to forget about it. I am not quite sure how broad or narrow of a reading to give to Johnston or Bearcat. And I am reluctant to say that guaranteed claims are always different from unguaranteed claims when they're both unsecured. Listen to my question before you answer it. Because if you answer it before I finish it, you'll answer it with different questions. So let me start. I am disinclined to read either Bearcat or Johnston broadly. I am also disinclined to the view that a guaranteed unsecured claim is always different from a nonguaranteed unsecured claim, or that it's always the same, similar to an unsecured claim that is or is not guaranteed. Your notion, the way you address this case factually is you said here there was in fact a mini trial, and the court found that the guarantors were solvent and could pay the deficiency. Now, that strikes me as absolutely critical. If you look at that parent-child hypothetical I gave you, the reason that it was interesting was that the likelihood would be that the parent could pay the guaranteed claim, and that's what would make it dissimilar. However, many construction cases that I've seen in practice and on the bench, the guarantor is just as wiped out as the corporation or joint venture, whatever it was. I completely overlooked when I read this case that factual assertion. Tell me where to find the finding of fact that the court made that the guarantors were solvent and could pay the deficiency. It's in the memorandum decision denying motion for clarification. It starts there. It says at the end, at the end, the very end.  Okay. I haven't heard the finding of fact yet. That's fine. Yes. And in there, it's also stated above that, and the court has already determined that there is no additional evidence on the substantial similarity of the claims. The court has made a prime efficiency case of dissimilarity based on uncontested   similarity of the claims. So it's the existence of the guarantee, the fact that Wells Fargo is a broad suit, and the fact that no trade creditors are similarly claimed. It's in that decision. Where? I'm still waiting for the finding of fact that the guarantors were solvent and could pay the deficiency. Your Honor, I wanted to comment on Iboho, if I could have 30 seconds. Yes, yes. Okay. I mean, to me, it really matters. It does matter, and the court did make that point. I called in the guarantors and asked them under oath, are you solvent? Have you paid the deficiency? And they said yes, and we found that that was so. And in the member-owned decision with regard to confirmation, on page 3, it states, and in this case, even the risk associated with such a personal lien debt are further reduced by the guarantee of a solvent guarantor. So between that hearing and the subsequent hearing, the court did make determinations that the guarantee, okay, and because under all the evidence, that guarantee will continue in effect and the guarantor will remain solvent, even considering the secured commitment to fund the debtor, the court made findings as to solvency, despite the fact that they were committed to investing $2 million in the value. What are the words amounting to a finding of solvency? As noted by the court's preliminary findings, the feasibility of the plan is substantially enhanced by both the existing and continuing guarantee of the Wells Fargo debt by a solvent guarantor, and by that guarantor's commitment to fund up to $2 million to cover shortfalls in the first three years and to secure the commitment with collateral. So quick answer to the court's two questions. I do not read Johnson broadly. I read it very narrowly, very specific set of facts. And I do not believe that all guarantees arise, make a claim dissimilar, only guarantees that meet the standards, these narrow standards as determined by findings of fact. One further, and I appreciate the court, is about 10 minutes before court, counsel handed me this piece of paper with the citation on it. At the recess, the short recess, I had the opportunity of getting on my iPad, quickly looking up a synopsis of the case. I would --" And had a chance, and my quick reading of Ivanhoe, and I'll be honest, I don't remember it. Though I did practice under the act, I hate to say, is that it dealt with the following fact situation. It dealt with a debtor who originally gave a note secured by a mortgage. He transferred the property to a third party. That third party transferred the property to another third party. But he remained obligated on the note. That third party foreclosed on the mortgage, and then proceeded to assert a deficiency claim in the bankruptcy proceedings. The court held that deficiency claim was to be treated as an unsecured claim, under then Section 68 of the Constitution. That's the flip of the act. If there's a difference, or it's meaningful to this case, I don't understand it. But that's what I got from it. All right. Thank you very much, counsel, for your argument today. Very interesting legal issues. So I have three minutes. I would like to answer Judge Kleinfeld's question on judicial -- I believe you asked a question on judicial estoppage. Yes. Yes, I have an answer to both of those. On judicial estoppage, Loop 76 admitted in its response to the motion for a state pending appeal, which is located in the supplemental exhibits in support of appellant's brief in opposition to the motion to dismiss appeal, at page 00053. And that document, by the way, is Ninth Circuit document number 33-3. That the fact that a plan has been confirmed and consummated does not make all the issues related to the appeal moot. The inquiry is the ability of the court to fashion relief if the appeal is successful, and whether modification of the plan would bear unduly on the innocent. The BAP denied a stay pending appeal, finding, among other things, that if the confirmation order should be vacated or reversed and remanded, appropriate relief can be fashioned. We believe that the representations by Loop 76 to the BAP on which the BAP acted in denying a stay pending appeal rise to the level of judicial estoppel. Second, on the issue of findings made by the bankruptcy court regarding the solvency of the guarantors, the court made absolutely no findings on solvency of the guarantors. There was an evidentiary hearing, right? There were two evidentiary hearings. And at those evidentiary hearings, did Wells Fargo make any attempt to introduce evidence of the solvency or insolvency of the guarantors? Wells Fargo cross-examined the guarantors on their lack of solvency at those hearings. At the classification hearing, the debtor introduced no evidence, no evidence at all, regarding the solvency of the guarantors. And the court did not rely or make any findings on the solvency of the guarantors at the classification hearing. In fact, in response to Wells Fargo's motion for findings of fact and conclusions of law, the court said it had ruled as a purely legal matter that the existence of the guarantee rendered the claim not substantially similar. Well, let me ask you this. If we don't agree with you that as a legal matter, the existence of the non-debtor guarantee is irrelevant, doesn't this then become a factual issue reviewable for clear error? Because I'm looking at, and let me put in context my question to you, I'm looking at ER 192, which is the bankruptcy court's ruling. And the bankruptcy court said at the evidentiary hearing on confirmation, the parties are free to introduce evidence tending to show why the existence of the guarantee is either is or is not likely a significant factor affecting creditors' votes on the plan. So, for example, and the court got very specific in terms of its direction to Wells Fargo. For example, if it can be shown that Wells Fargo has no interest in pursuing the guarantee, or that the guarantors are all insolvent, then the court might conclude that the existence of the guarantee is not an appropriate distinguishing characteristic to render the claims substantially dissimilar. So if we read Johnson and Baccarat narrowly to say, well, the existence of the non-debtor guarantee can be in some circumstances similar, can in some other circumstances dissimilar, and the bankruptcy court's job, as it is the job of the trial court, is to basically hold evidentiary hearings or trial and sort that out. So after this statement by the bankruptcy court, there was an evidentiary hearing, at which time Wells Fargo had the opportunity to present to the bankruptcy court the nature of the non-debtor guarantee. That to me suggests that then whatever ruling the bankruptcy court then rendered becomes reviewable. For clear error, because those are factual matters. Now, of course, that, my analysis assumes that the non-debtor guarantee can, in the appropriate case, be considered as relevant. But assuming that I go there, then does that become reviewable for clear error? If there had been findings on the solvency of the guarantors for purposes of classification, and those were factual findings, then they would be reviewable for clear error. There were no such findings. The only comment the bankruptcy court made about the solvency of the guarantor in its confirmation ruling was in the context of feasibility. And what it said is the existence of a solvent guarantor who's putting up X amount of dollars into the new value under the plan, that will help in the event there's a shortfall in debt service. It was a feasibility finding. The court did not make a single additional finding to its legal finding on the classification issue. All right. Well, these are interesting issues, and I've allowed both parties extra time. But I do want to give you sufficient time to address Judge Watford's genesis. If he's still interested in hearing the answer, I want to make sure that you get to that. I would like to, but I did want to ask. I also, if I may, would cite the court to the evidence that was produced by cross-examination on the financial wherewithal of the guarantors. We cited it all in our reply brief in a footnote. It's all in volume five of the excerpts of record as to just what assets those guarantors would have to pay a deficiency claim, and the answer is next to nothing. And, in fact, they've paid nothing, with the exception of one guarantor who settled. On the genesis claim, there are a lot of sub-issues in the genesis claim, but we think the critical issues on the genesis claim is not whether that letter is or isn't a contract under Arizona law. Not to give anything away, we don't think it's a contract. The critical issue for purposes of this appeal is whether it constitutes a security agreement. And if you read that agreement and the interpretation of the agreement is an issue of law for this Court, it's not an issue of fact, you will see that there are no granting provisions in that letter granting genesis a security interest in the grip voice or in anything else. The agreement is a commitment letter, prefatory to the creation of loan documents and to the creation of an ultimate security agreement. The second sub-issue on the security agreement issue is whether the agreement adequately described the collateral. The description of the collateral is in the nature of a statute of frauds. It is a given from looking at the genesis letter itself that it does not describe the grip voice. The BAP was misled in oral argument to the point that the financing statement described the grip voice, and that was enough because it was signed. For starters, the financing statement was not signed. Ever since the change in the code, financing statements are not signed by anybody, the creditor or the debtor. To satisfy the statute of frauds, it would have had to have been signed by loop. It isn't. There isn't even a space for a signature on it. And so the financing statement cannot supply the description of the collateral that's missing from the security agreement. Is that sufficient to answer your Honor's inquiry on the genesis claim, or would you like me to say more? No. All right. Well, thank you very much for your arguments. Did you have any other questions? All right. We have your arguments. Thank you very much.
judges: Kleinfeld, Nguyen, Watford